## GOOD ROADS MACHINERY CO. OF NEW ENGLAND v. UNITED STATES.
### No. 6834.

District Court, D. Massachusetts.
June 18, 1937.

Henry I. Morrison and Theodore Morrison, both of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., by John A. Canavan, Asst. U. S. Atty., both of Boston, Mass.

SWEENEY, District Judge.

The plaintiff seeks to recover from the United States the sum of $6,421.84 for certain materials and equipment sold by it to the United States in connection with a.

Public Works Project in the City of Lowell.

The defendant in its answer sets up the fact that the claims were properly disallowed by the Comptroller General of the United States because of the lack of authority of any person to bind the United States in such purchases, and further alleges that failure to comply with section 3709 of the Revised Statutes of the United States (41 U.S.C.A. § 5) would bar the plaintiff's right to recover.

It has been agreed between the parties hereto that the merchandise for which recovery is sought was delivered to Project No. 42 in Lowell, Mass.; that the prices charged are fair and reasonable; and that there is no bad faith in either party.

Joseph W. Bartlett was appointed Chairman of the Board of the Civil Works Administration for Massachusetts in the latter part of November, 1933. Shortly after his appointment, a board was set up in Massachusetts, and commenced to function. George E. Crotty of Lowell was appointed CWA Administrator for the City of Lowell. At the time of his appointment in Washington, Mr. Bartlett was instructed by the National Administrator, as to his duties. He was told that a national emergency existed, and that his job was to put to work approximately 10,000 men and women within the next thirty days. He was instructed and authorized to do all things necessary to accomplish this end. Immediately upon his return to Boston, Mr. Bartlett for the board approved Federal Works Project No. 42, having to do with the construction of a sewer in the City of Lowell.

This project had been under consideration for several months by the City of Lowell as a private enterprise. It had been abandoned as such upon the failure of the city to obtain the approval of the Massachusetts Emergency Finance Board because of the poor financial condition of the city. While the city had been considering the project as a private enterprise, through its proper agents, it had inquired into, and obtained from the plaintiff, estimates as to the costs of material and equipment needed for it. When it was approved by the CWA, and funds were available, all of the preliminary work done by the City of Lowell resulted as a benefit to the CWA project in that they were ready to, and did, employ a large number of workers immediately. Crotty was authorized by the Chairman of the CWA Board to purchase materials and equipment in behalf of the United States Government. At the time that such authority was given, the rules and regulations under which purchases might be made had not been promulgated.

Purchases were made by Crotty in the name of the United States on November 27, 1933, November 29, 1933, December 4, 1933, December 8, 1933, December 11, 1933, and December 19, 1933. The items dated December 4, December 11, and December 19 have been paid in full by the Government. It is the other items for which the plaintiff seeks recovery.

The Government contends that the General Accounting Office properly disallowed this claim because (1) advertising was not made for competitive bids, and (2) that the local officers of the CWA did not comply with Rules and Regulations No. 7 of November 27, 1933.

Crotty's acts in purchasing the equipment from the plaintiff were ratified and approved by the Assistant Executive Director for the State of Massachusetts after the Assistant Purchasing Agent had certified to him that the purchases were made before the establishment of centralized state purchasing authority, and that the prices and terms had been examined and approved.

In a letter from the Federal Works Administration at Washington to the General Accounting Office, it was recommended that payments herein sought to be recovered be made, and it was pointed out that compliance with Rules and Regulations No. 7 would have resulted in the United States paying more money for the rental or lease of this equipment than it is called upon to pay as a purchase price.

Section 3709 of the Revised Statutes of the United States (41 U.S.C.A. § 5) reads as follows:

"All purchases and contracts for supplies or services in any of the departments of the Government, * * * except for personal services, shall be made by advertising a sufficient time previously for proposals respecting the same, when the public exigencies do not require the immediate delivery of the articles, or performance of the service. When immediate delivery or performance is required by the public exigency, the articles or service required may be procured by open purchase or contract, at the places and in the manner in

654

which such articles are usually bought and sold, or such services engaged, between individuals."

The plaintiff is entitled to recover, assuming that all other regulations are complied with, if it can be determined that a public exigency requiring immediate delivery existed at the time of this purchase.

■ It has been many times held by the Comptroller General of the United States that a public exigency may not be administratively created, and used as a basis for making awards of contracts for the purchase of supplies without advertising for competition as required by law. That does not mean, however, that a public exigency existing may not be recognized and dealt with administratively. Evidently, the Comptroller General, in refusing payment in this case, felt that there was no public exigency within the meaning of section 3709 of the Revised Statutes so that competitive bidding might be eliminated.

■ A "public exigency" demanding immediate delivery, as referred to in the statute, is a sudden and unexpected happening; an unforeseen occurrence or condition; a perplexing contingency or complication of circumstances; or a sudden or unexpected occasion for action. United States v. Sheridan-Kirk Contract Company (D.C.) 149 F. 809; United States v. Garbish, 222 U.S. 257, 32 S.Ct. 77, 56 L.Ed. 190; United States v. Southern Pacific Co. (C.C.A.) 209 F. 562. See, also, American Smelting & Refining Co. v. United States, 259 U. S. 75, 42 S.Ct. 420, 66 L.Ed. 833.

■ At the time that these contracts were entered into, the Government of the United States, recognizing that a national emergency or calamity existed, provided machinery whereby people might be put to work immediately. The memory of that period is too fresh in our minds for us to doubt that a great economic depression causing widespread suffering among the people of these United States did exist. Whether this was such an exigency as comes within the terms of section 3709 of the Revised Statutes of the United States seems to be the immediate question to be answered in this case. I am of the opinion that the construction placed upon the words "public exigency" by the Comptroller General is much too narrow. Where all of the other branches of the Government recognized that a sudden and unexpected occasion for action had arisen, and were directing their best efforts to solving the complicated and perplexing problem of unemployment, it comes with little grace from the accounting and bookkeeping department of the Government to refuse to pay this claim because of an unreasonable and narrow construction which it places on the statute involved. In the light of the fact that the Comptroller General presumably approved and paid for other purchases made from the same plaintiff at about the same time, and under the same circumstances, his position is inconsistent to say the least. I am of the opinion that the purchases for which the plaintiff seeks recovery here were made under a public exigency requiring immediate delivery of the articles purchased, and under such circumstances that the necessity for advertising for competitive bidding could be safely eliminated. United States v. Belridge Oil Company (C.C.A.) 13 F.(2d) 562. Immediate delivery or performance was necessary in order to accomplish the results desired by the National Administrator, and authorized by the Congress of the United States. I therefore find and rule that the plaintiff is entitled to judgment unless it appears that it is barred on other grounds.

■ On November 27, 1933, which was the date of the delivery of the largest item in the plaintiff's bill, the Federal Civil Works Administration promulgated Rules and Regulations No. 7 at Washington, which provided as follows:

"2. *Construction Equipment*

"Construction equipment used on Civil Works projects shall not be purchased with funds provided through the Federal Civil Works Administration, or through the Federal Emergency Relief Administration. Construction equipment shall be rented, or leased, and wherever possible a sixty day purchase clause shall be included in the rental or lease contract", and

"5. *Control of Purchase of Materials*

"All purchases of materials amounting to more than $100.00 shall be under the supervision and control of the State Civil Works Administration."

This regulation radically changed the authority previously given by the Government to its agents. There was testimony, and I find as a fact, that knowledge of the promulgation of these regulations by the authorities in Washington which served to limit a broad authority previously given was

not communicated to the local state authorities until some time had elasped after November 27, 1933.

It is the Government's contention that the mere promulgation of these rules in Washington is sufficient to bar recovery by this plaintiff on the theory that one who deals with the Government is bound to have knowledge of the Government's authority to act, and an unauthorized act of an official cannot estop the Government from insisting upn its invalidity, however beneficial the act may have proved to be to the United States. If this were a question of mere lack of authority, I am convinced that such reasoning would apply. Where, however, the United States had given full authority to its local officials to purchase machinery and equipment, and later had promulgated a regulation, such as Rules and Regulations No. 7 (2) and (5), limiting such authority, I am of the opinion that the United States was bound to notify its agents of such limitation at once.

Until Rules and Regulations No. 7 were promulgated, and called to the attention of the contracting agent of the Government, it manifestly appeared that the agent was acting within the scope of the authority granted to him by the Government, and that he had been held out as having authority to do the act that he did—namely, to purchase the articles for which the plaintiff here seeks recovery. See Whiteside, et al. v. U. S., 93 U.S. 247, 23 L.Ed. 882. The Government ought not now, in the absence of a tender of a reasonable rental figure to the plaintiff, or in the absence of an offer to return the purchased articles to it in the same condition that they were at the time of delivery to the United States, to be allowed to invoke an extremely technical defense to defeat this claim.

I find as a fact that the state CWA officials did not have knowledge of the promulgation of Rules and Regulations No. 7 until after the contracts of November 27, 1933, November 29, 1933, and December 8, 1933, were executed.

The merit of the Government's argument is further nullified by its acceptance, allowance, and payment for equipment from this plaintiff made in the same manner but on dates subsequent to the dates of delivery of the items claimed here. Out of six purchases made from this plaintiff, the Government has paid for the three smallest items. At least one of these items came within the purview of Rules and Regulations No. 7 (2) and (5). There is no appealing reasoning, and certainly no contribution to consistency in the General Accounting Office's allowance of some items, and disallowance of others where they stand on equal footing. Their interpretation of public exigency is a narrow and strained one. Their position with relation to compliance with Rules and Regulations No. 7 is highly technical and inconsistent with their other actions.

The defendant's requests for rulings 1, 2, 3, and 6 are denied. Requests 4 and 5 appear in the above.

I therefore find and rule that the plaintiff is entitled to a judgment in the amount of $6,421.84.